UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

ABDUS SHAHID and HALIMA ANSARI,

           Plaintiffs,

      -against-

THE CITY OF NEW YORK,

           Defendant.
---------------------------------------------------------X

**REPORT & RECOMMENDATION**
**03-CV-5228 (NGG) (LB)**

**BLOOM, United States Magistrate Judge:**

    Plaintiffs bring this *pro se* action alleging that defendant conspired against them on the basis of their race and national origin to deprive them of their rights to equal protection in violation of 42 U.S.C. §1983. Plaintiffs state that the City filed Housing Part ("HP") actions against them and cited them with false violations under the City's Housing Maintenance Code. Defendant moves to dismiss the instant action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). The Honorable Nicholas G. Garaufis referred the motion to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. §636(b). For the following reasons, it is recommended that defendant's motion be granted and plaintiffs' amended complaint be dismissed in its entirety.

## STANDARD OF REVIEW

    In deciding a motion to dismiss under Rule 12(b)(6), a Court must "accept all allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant[s]." Sheppard v. Berman, 18 F.3d 147, 150 (2d Cir. 1994). "The court may not dismiss a complaint unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff[s] can prove no set of facts which would entitle [them] to relief."



Scutti Enters., LLC. v. Park Place Entm't Corp., 322 F.3d 211, 214 (2d Cir. 2003) (quoting Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997)). When a party is proceeding *pro se*, the Court is obliged to "read [their] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

## BACKGROUND

The following facts, taken from plaintiffs' amended complaint dated June 3, 2004, are assumed to be true for the purpose of this Report and Recommendation.[1] Plaintiffs are a husband and wife of Bangladeshi origin. They own a multi-unit residential building located at 285 Cooper Street in Brooklyn. The property is a three story brick building with six apartments. Amended Complaint at 1 ("Am. Comp."). Plaintiffs allege that the instant action arises in part because of a long running dispute with squatters in their building:

> a Hispanic squatter forcefully occupies one apartment for 7 years and another Hispanic Fraud (living there using prior tenant's name) forcefully occupies another apartment for more than 7 years. Plaintiffs are in court for 7 years against the Hispanic squatters and frauds; and two other Hispanic tenants (Mother and Son) who directly helped the squatter and fraud to enter and to live in the premises forcefully.

Id.

Plaintiffs contend that defendant "engaged in a serious conspiracy to foreclose the property of Bangladesh national origin and thus to help the Hispanic squatters and frauds and other two holdover Hispanic tenants to live permanently in the premises." Id. at 1. Plaintiffs further allege that defendant pursued this conspiracy by bringing HP actions and by placing violations on their property "without court order." Id. Plaintiffs allege that Inspector Fernando

---

[1] For ease of reference, the Court has renumbered plaintiffs' submissions.

Maldonado of the Brooklyn Borough Office of the New York City Department of Housing Preservation and Development acted to harass plaintiffs and ultimately wants to foreclose on their property. Id.

Plaintiffs maintain that Inspector Maldonado submitted false inspection reports in furtherance of a conspiracy to foreclose on the subject property. Plaintiffs state that none of the conditions for which they received violations actually needed repair. Plaintiffs explain that they purchased the subject property on January 31, 1997, but allege that it was not until they filed complaints against defendant Maldonado that the City began to assess fines and tax liens against the property. Id. Although plaintiffs filed numerous written complaints about these false assessments to City officials, their complaints merely resulted in more false violations, penalties and tax liens. Id. at 5.

Plaintiffs filed the instant action on October 16, 2003, naming only the City of New York. After a status conference on April 19, 2004, the Court directed plaintiffs to file an amended complaint which plaintiffs did on June 4, 2004. The amended complaint likewise names only the City of New York. Defendant moved to dismiss the amended complaint. Plaintiffs opposed this motion and defendant filed a reply.

## DISCUSSION
### A. Municipal Liability

Plaintiffs' amended complaint alleges that the City of New York has engaged in "intentional dangerous" conspiracies to foreclose upon plaintiffs' property. These allegations relate to violations placed on plaintiffs' property for building code violations and "orders to repair" that the City issued from July 2002 through May 2004. Am. Comp. at 2. Plaintiffs allege that after serving these "false repair bills," the City of New York "made a 39 page false

3

inspection report to make a civil penalty more than $9 Million Dollars against plaintiffs of Bangladesh national origin." Am. Comp. at 3. Even after plaintiffs attempted to repair these violations, defendant noticed "25 pages (146) false violations to make a civil penalty of over Five Million Dollars." Am. Comp. at 4. Recently defendant cited plaintiffs for "146 violations in 6 apartments and hallways and basements. Among these 146 violations, the defendant reported 83 violations in apartment # 2f where a squatter is living. Thus the defendant engaged in conspiracy to help the Hispanic squatters to foreclose the property." Am. Comp. at 4.

To state a claim under 42 U.S.C. §1983 against a municipality, plaintiffs must allege that a deprivation of their constitutional rights was caused by a specific official policy or custom of the municipality. Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658 (1978). "A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a policy or custom." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993). A municipality may not be held liable under §1983 under a theory of *respondeat superior,* and may only be held liable on the basis of actions by individuals who are carrying out an officially adopted practice, policy or custom. Hayut v. State Univ. of New York, 353 F.3d 733, 754 (2d Cir. 2003).

Plaintiffs claim they filed numerous complaints with the City of New York regarding the false violations on their property and that the City took no action. Nevertheless, the amended complaint fails to allege any officially adopted custom, policy or practice of the City of New York that deprived them of their constitutional rights. Plaintiffs' complaint consists entirely of conclusory statements alleging that the City of New York is conspiring to foreclose on their property because of their national origin.

However, even accepting plaintiffs' allegation that none of the violations on their

property were valid, the amended complaint fails to allege any facts that connect these false inspection reports to any officially promulgated custom, policy or practice of the City of New York. In the absence of a connection between these false inspection reports and an officially promulgated City custom, policy or practice, plaintiffs' complaint fails to state a claim against the City of New York under §1983. Where a complaint contains no allegations that would support liability under Monell, dismissal is required. Curry v. City of Syracuse, 316 F.3d 324, 330 (2d Cir. 2003). Accordingly, defendant's motion should be granted and all claims against the City of New York should be dismissed.

## B. INSPECTOR MALDONADO

Although plaintiffs' amended complaint names only the City of New York as a defendant in the case caption, even if the Court liberally construes plaintiffs' amended complaint to include Inspector Maldonado as a named defendant, the complaint nevertheless fails to state a claim upon which relief can be granted and should be dismissed.

The Court notes that the standard for evaluating conspiracy claims under §1983 has not been settled. In 2002, the Supreme Court held that where the Federal Rules of Civil Procedure do not specify heightened pleading requirements, the Federal Rules of Civil Procedure's simplified notice pleading standard applies. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). Thus, the Court acknowledges that "it is questionable whether, after Swierkeiwicz, it is necessary to set out all the elements of a claim of conspiracy to violate §1983, as opposed to identifying a claim of conspiracy together with a sufficient indication of the parties, the general purpose of the conspiracy, and the approximate date so that

5

the defendants have notice of what they are charged with." Bullard v. City of New York, 240 F.Supp. 2d 292, 301 (S.D.N.Y. 2003).[2]

Nevertheless, the Second Circuit has not explicitly ruled on the applicability of Swierkiewicz to conspiracy claims under 42 U.S.C. § 1983. See Toussie v. Powell, 323 F.3d 185, n3 (2d Cir. 2002)("we do not consider whether our previous statements on the pleading requirements for such conspiracy allegations remain valid in light of ... [Swiekiewicz])(citations omitted). However, the Circuit's decision in Ciambriello, which was issued *after* the Supreme Court's decision in Swierkiewicz, holds that "complaints containing only conclusory, vague, or general allegations that the [defendant has] engaged in a conspiracy to deprive the [plaintiffs] of

---

[2]In the wake of the Supreme Court's decision in Swierkiewicz, the Seventh Circuit concluded in Walker v. Thompson et al, 288 F.3d 1005 (7th Cir. 2002), that "[n]othing ... compels a conclusion that the plaintiff in a conspiracy case must plead the overt act ... the function of civil conspiracy doctrine being merely to yoke particular individuals to the specific torts charged in the complaint ..." Walker, 288 F.3d at 1008 (internal quotations and citations omitted). Judge Posner further stated that "[c]ases which say that 'conclusory allegations' of conspiracy, or allegations that fail to mention an overt act, are not enough to withstand a motion to dismiss *cannot be squared with* ... *Swierkiewicz*; we note that in Swierkiewicz, the Supreme Court was reversing the Second Circuit — the author of the principal cases that require allegation of the overt act. Id.; see also Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003) (concluding that a conspiracy allegation should be "short and plain" and that "Rule 8 does not require or permit district court judges to require – fact pleading)(emphasis added). Both the D.C. Circuit and the Ninth Circuit have joined the Seventh Circuit's post-Swierkiewicz analysis for analyzing complaints. See Ciralsky v. CIA, 355 F.3d 661, 672 (D.C. Cir. 2004) ("Indeed all a Title VII complaint has to say to survive dismissal under Rule 12(b)(6) is: The plaintiff was terminated from his job because of his religion."); Maduka v. Sunrise Hospital, 375 F.3d 909, 912 (9th Cir. 2004) ("The district court['s] ... conclusion that the Complaint was inadequate ... because it included only conclusory allegations of racial discrimination, and ... failed to allege any fact constituting either direct or circumstantial evidence of discrimination ... is inconsistent with Swierkiewicz's willingness to allow[] lawsuits based on conclusory allegations of discrimination to go forward") (citation omitted).

"In contrast to the Seventh, Ninth and D.C. Circuits, the First and Eleventh Circuits have rejected the proposition that Swierkiewicz should be understood as permitting a plaintiff to assert mere conclusory allegations in support of a claim." Straker v. Metropolitan Transit Authority et al., 333 F.Supp.2d 91, 99-101 (E.D.N.Y. 2004); See Educadores Puertorriquenos En Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004) ("in considering motions to dismiss courts should continue to eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets"). As the Eleventh Circuit opined "[w]hile Swierkiewicz made clear that pleading a McDonnell Douglass *prima facie* case was not necessary to survive a motion to dismiss, *it did not even remotely suggest* that a pleading could survive dismissal when it consisted of only the barest of conclusory allegations without notice of factual grounds on which they purport to be based." Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1270-71 (11th Cir. 2004)(emphasis added).

[their] constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (quoting Dwares, 985 F.2d at 100).[3]

As the Second Circuit noted in another post-Swierkiewicz decision, "there is a critical distinction between the notice requirements of Rule 8(a) and the requirement under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted." Wynder v. McMahon, 360 F.3d 73, 80 (2d Cir. 2004). "Conceptually, the Court believes that there is a distinction to be drawn between fair notice of what the plaintiff's claim is and the grounds upon which it rests; conclusory allegations cannot satisfy the latter." Straker, 333 F.Supp.2d at 101.

Although plaintiffs' amended complaint does not specifically name Inspector Maldonado as a defendant, the Court shall *ad arguendo* consider Inspector Maldonado to be a defendant in this action. Plaintiffs allege that Inspector Maldonado conspired to foreclose on plaintiffs' property so that the Hispanic squatters could remain in the building. As plaintiffs' amended complaint states:

> [b]eing racially motivated and under the scope of his employment, Mr. Fernando Maldonado the Hispanic supervisor of inspectors of Brooklyn Borough Office of the New York City Department of Housing Preservation and Development engaged in a serious conspiracy to foreclose the property of plaintiffs of Bangladeshi national origin and thus to help the Hispanic squatters and frauds and other two holdover Hispanic tenants to live permanently in the premises without going to court.

Am. Comp. at 1-2.

---

[3] One Court in our Circuit has cautioned against reliance on Ciambriello in light of the Supreme Court's decision in Swierkiewicz. In Bullard and Bullard v. City of New York et al, 240 F. Supp 2d 292 (S.D.N.Y. 2003), Judge Koeltl observed that "Ciambriello was fully briefed before Swierkiewicz was decided and the parties did not dispute in the briefs the continuing validity of Second Circuit precedent ... after Swierkiewicz. Indeed, while a petition for rehearing was filed in Ciambriello after Swierkiewicz was decided, that petition was not decided under Swierkiewicz, which was not even cited to the court." Bullard, 240 F. Supp 2d at 302.

Plaintiffs fail to allege any facts or details "of any specific agreement" connecting Inspector Maldonado to any conspiracy. Kramer v. City of New York, No. 04 Civ.106, 2004 WL 2429811 at *7 (S.D.N.Y. November 1, 2005). Plaintiffs' amended complaint contains only two specific factual allegations regarding Inspector Maldonado:

> On or about July 14, 2003, plaintiffs called Mr. Fernando Maldonado, supervisor of inspectors of the New York City department of Housing Preservation and Development, Brooklyn Borough Office. Mr. Fernando Maldonado said he made the report and gave it to the Housing Litigation Division of the New York City DHPD.

Am. Comp. at 3.

Additionally, the amended complaint states that Inspector Maldonado "made a 39 pages false inspection report to make a civil penalty more than $9 million dollars." Id. Plaintiffs' amended complaint alleges no facts regarding Maldonado other than to repeat the conclusion that he "engaged in a serious conspiracy to foreclose the property." Am. Comp. at 3. Plaintiffs' allegations are insufficient to state a claim upon which relief can be granted.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999); Lashley v. Wakefield, 367 F. Supp. 2d 461, 472 (W.D.N.Y. 2005). Even when construed to name Inspector Maldonado as a defendant, plaintiffs fail to plead the existence of an agreement between two parties.

Plaintiffs' amended complaint, even when liberally construed, names only one state actor, Inspector Maldonado. Plaintiffs' amended complaint lacks any allegations "regarding the existence, or even inference, of any specific agreement to violate [plaintiffs'] rights, whether such an agreement was entered into, the nature of the agreement, or specific acts in furtherance of

the agreement." Kramer, 2004 WL 2429811 at *7. Plaintiffs state that Maldonado is Hispanic and the "squatters" are Hispanic and therefore there is a conspiracy. The existence of a specific agreement to violate plaintiffs' rights cannot be inferred simply because Inspector Maldonado is the same national origin as the unnamed squatters. Plaintiffs allege no connection between Inspector Maldonado and their squatters. Plaintiffs "diffuse and expansive allegations are insufficient" to state a conspiracy since they are not "amplified by specific instances of misconduct." Ciambriello, 292 F.3d at 324. Since plaintiffs fail to allege any facts regarding any conspiracy, even when liberally construed to name Maldonado, plaintiffs' complaint fails to state a claim upon which relief can be granted. Accordingly, defendant's motion should be granted and the complaint should be dismissed in its entirety.

## LEAVE TO REPLEAD

"A pro se complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795-96 (2d Cir. 1999); See Cruz v. Gomez, 202 F.3d 593, 597-98 (2d Cir. 2000)(pro se plaintiffs should be allowed to amend their complaint prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim"). "While leave to replead is liberally granted to pro se litigants, leave need not be granted here in light of the likely futility of such a grant, as well as the [additional] opportunit[y] already given to the plaintiff[s'] to articulate the factual bases for [plaintiffs'] conspiracy claims." O'Diah v. New York City, No. 02 CIV. 2742002, WL 1941179 (S.D.N.Y. August 21, 2002).

By Order dated November 17, 2003, the Court granted plaintiffs an opportunity to amend

their complaint. In granting leave to amend, the Court observed that plaintiffs have already filed two other claims of "illegal racial preference" against Brooklyn Legal Services and the Ridgewood-Bushwick Senior Citizen Council. November 17, 2003 Order at 1-2. Plaintiffs claimed in their original complaint that Inspector Maldonado filed a false inspection report in retaliation for plaintiffs' lawsuit against the Ridgewood-Bushwick Senior Citizen Council, Inc. Complaint at ¶¶4-5. Although the Court concluded that plaintiffs' original complaint was frivolous, the Court cited the standard for a retaliation claim under 42 U.S.C. §1983 and granted plaintiffs leave to file an amended complaint. November 17, 2003 Order at 2.[4]

Plaintiffs' original complaint makes no mention of conspiracy and instead alleges retaliation. Plaintiffs' amended complaint alleges an entirely new, but equally frivolous theory based on conspiracy.

From the face of the amended complaint, there is no allegation that Inspector Maldonado even knows the alleged squatters, much less acted "in a willful manner, culminating in an agreement, understanding or meeting of the minds, that violated [the plaintiffs'] rights, privileges, or immunities secured by the Constitution or federal courts." Shabazz v. Pico, 994 F. Supp. 460, 467 (S.D.N.Y. 1998). Plaintiffs' amended complaint rings hollow. Plaintiff's allegation that there is a conspiracy because Inspector Maldonado is Hispanic and the alleged squatters are Hispanic is insulting. Like their original complaint, plaintiffs' amended complaint fails to state a claim upon which relief can be granted.

The Court has already afforded plaintiffs an opportunity to amend a frivolous complaint.

---

[4]The Court further observed that "this is but one of several cases which plaintiffs have filed clearly raising issues that were litigated in landlord-tenant court. Plaintiffs are advised that they cannot turn to federal courts to relitigate claims which they have raised without success in state court." Nov. 17, 2003 Order at 3.

Plaintiffs responded with more frivolous and non-specific allegations of an ethnic conspiracy. It would not serve the interests of justice to allow plaintiffs to replead again. Accordingly, leave to amend should be denied.

## CONCLUSION

Plaintiffs' amended complaint fails to allege any custom, policy or practice that would give rise to municipal liability against the City of New York. When liberally construed to consider Inspector Maldonado as a defendant, the amended complaint fails to state a claim upon which relief can be granted. Since plaintiffs have already been afforded an opportunity to replead, it is recommended that defendant's motion should be granted and plaintiffs' amended complaint should be dismissed in its entirety.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated: August 5, 2005
Brooklyn, New York

11